Good morning. It pleases the Court, my name is Barbara Creel. I'm from the Federal Public Defender's Office here in Portland, Oregon. I represent Randy Joseph Moore, the petitioner appellant in this case. Trial counsel's failure to move to suppress Mr. Moore's coerced and involuntary statements fell below the standard in this case. The Magistrate Judge found that a reasonable person would have believed that he was being given a promise of leniency in Mr. Moore's case based on the circumstances surrounding his confession to the police. Because of this, his statement was involuntary. We only need to look at the record to see that the attorney's performance fell below the standard. The affidavit of Kim Jordan, the trial attorney, shows that he didn't even recognize the motion to suppress based on coercion. The affidavit admits, I did not file a motion to suppress. My reasons for doing so were twofold. Number one, Mr. Moore was not in custody. Two, he believed that Mr. Moore had previously given a full confession to two other people. This shows that the trial attorney only recognized the Miranda issue. Thinking that the Miranda issue was out the window, he didn't look any further. He breached both his duty to investigate the facts of the incident and the statement to the police in making this decision. This wasn't a decision... Why would that be if he believed that he had given a confession to his brother who would then have to testify? Well, that goes to the second prong of the Strickland standard, which would, we have to prove both that the attorney's performance fell below the standard and two, that he was prejudiced. Mr. Well, that goes to both prongs, doesn't it? It's a question of whether taking that into consideration, he was unreasonable in not making the motion because he thought that there was no prejudice. And it also goes to the prejudice prong. The trial attorney didn't do any investigation regarding the statements. By his own admission, he didn't hire an investigator. Well, why do you need one? That doesn't seem to make any difference. I mean, the record, there's a pretty clear record regarding the questions relating to the confession. What would an investigator have found out? The clear record is as it is because of the statements that Mr. Moore and Lonnie Wolheiser gave to the sheriff's department. What would the investigator have found out? So the state had no other evidence other than the statement itself. I understand that. It was incumbent upon the trial attorney to look into the facts of the statement and the facts of the crime itself in order to decide whether or not investigation was necessary. Strickland is based on the fact that... You don't have to have an investigator investigate nothing. What would the investigator investigate? Well, first of all, Mr. Moore says in his deposition before the post-conviction court and at post-conviction trial that his attorney didn't even look at the statements. So an investigator could have gotten copies of the police statements. Is this an entirely separate issue from the Miranda and the coercion issue? They're really related issues on the confession, that there's a violation of Miranda, which the judge said didn't occur because he wasn't in custody. And there was no discussion of the coercion. But that both relates to the whether to the motion to suppress the confession. Is your point on failure to investigate a separate issue that, in addition to the confession issue, there's a failure to investigate? I don't think so, Your Honor. The failure to investigate is part and parcel of the failure to file a motion to suppress. An attorney cannot make a strategic decision to forego investigation unless he knows all the facts of the case. It's not reasonable to decide to dismiss a whole defense without looking into the case at all. Well, if you have the confession, you're not going to have a lot of defense. Why don't we stick sort of for the moment to the basic questions? There seems to me there are three questions here. Number one is, was he in custody? I'm not getting the standards, you know, whether it was unreasonably, objectively unreasonable or whatever it is. The question is, one, the court said there was no Miranda violation because he wasn't in custody. The second one is the coercion question. Was there promise of benefits? And the third one, which applies to both of those, is, was there such other evidence, namely, that the defendant told the story to his brother and supposedly to somebody else? Was that sufficient reason to not make a motion because there was no purpose to the motion? And secondly, was it not prejudicial because even if the confession had been suppressed, the same information would have come in? Those seem to me to be the issues here. That's right, Your Honor. Okay. So why don't we just sort of focus on those? We've only got four minutes left. Mr. Moore has presented his issues in his petition, just as you've explained them, both that the attorney failed to file a motion to suppress based on Miranda because he believed he was in custody. Let's take the Miranda issue. Okay. As to whether the attorney's decision not to contest it on the Miranda grounds was a reasonable, sufficiently reasonable decision. The attorney had the confession. And in the confession, there's all these statements saying you're free to leave and we came voluntarily and we're not in custody and so on. At the same time, there were some evidence, I guess, of these state caveats, that they were told that they were – were they in custody the day before? Was he in custody the day before? He was given Miranda warnings the day before, so somebody seemed to have thought he was in custody. Is that right? Yes. They were taken in the day before and questioned and then let go. Taken in meaning arrested, meaning what? They weren't arrested. They were called upon by the police officers and asked to go down to the sheriff's office to talk and they went in, invoked their Fifth Amendment rights and then were released. And then they were released. That's correct. And told to come back at an ascertainable time the next day. They were admonished to talk with Ray Moore, Mr. Moore's brother, who was, as the facts set out, a police informant 10 years prior who had been involved in a murder, came, cooperated with the police, and then was not charged with any crime in that time. There's some evidence in the record that they had called and said, we're not going to come back right now and the police said you better get over here or we're going to come get you or something like that. That's right. They were told to come at a specific time. They called at a specific time and said, we still can't find an attorney. Is that contested evidence? Has anybody, has the people who supposedly said this agreed that they said it? It's undisputed. It's in the record both as Mr. Moore remembers it and in the police records that they were called in and told to come in as soon as possible or they would be arrested. That isn't a police record. I believe so. I'd have to double check the record. There's evidence at the hearing below that Mr. Moore was not allowed to go to the water fountain or the restroom without a police officer accompanying him. But my understanding is that, and correct me if I'm wrong, is that that doesn't appear any place in the transcript of his encounter with the police. Am I correct on that? I believe so, Your Honor. But how was his counsel supposed to know at the time that he hadn't been allowed to go to the water fountain without somebody accompanying him? Wouldn't that be a claim of failure to investigate? Rather than, if the attorney had no reason to know that, Mr. Moore hadn't told him that and it didn't appear in the transcript with the police officers, why then is it ineffective assistance of counsel if the attorney has failed to know that he was accompanied to the bathroom? Because Mr. Moore told him so. And his brother was also there and also testified to the same thing, that whenever they went to the bathroom, they were escorted. And so they felt that. Did they testify that they told counsel that at the time of the plea or prior to the plea? Prior to the plea. Well, Kim Jordan says in his affidavit that he spoke at length about whether or not he should file a motion to suppress. And Mr. Moore has consistently maintained that he believed that he was in custody and could not leave. Yeah, but that's not what Kim Jordan says. Kim Jordan says he never believed he was in custody, admitted to me, he realized he was not in custody, and he said he discussed this extensively with Mr. Moore and that he discussed the question as to whether or not they would file a motion to suppress. Yes, that's correct. And that's what I began with, the coercion issue, because it shows that he exclusively focused on the Miranda issue and completely missed the fact that even if he lost the Miranda motion to suppress, there was still another separate issue that the magistrate found. Let's talk for a moment about the coercion issue. Okay. The police report and the other statement about the fact that they were going to be dragged in if they didn't come in, I couldn't find them. When they were asked to come back in the second time? Yes. Okay. But as to the coercion question, what is your strongest argument with regard to the coercive statements? For the most part, the police were pretty careful to say that we will try to do this, but not that we will succeed in doing it. Is there any place in which they said, we will promise them that they would get a lesser sentence or no sentence or no charge? I see my time is almost up. I'd like to answer the question. The magistrate quoted directly from Mr. Moore's deposition before the post-conviction court, where he explains that the detectives convinced him to waive his right to an attorney and give a confession in exchange for going to bat for him, just like they did his brother. And bringing his brother in, his brother was acting basically as a confidant, but also as a police informant, having that history of being completely. Is that per se coercive, or is it coercive if they didn't intend to do it? It is coercive because Mr. Moore gave up his right to an attorney, gave up his right to remain silent, and eventually gave up his right to trial with the belief that he would be treated in the exact same way that his brother was treated. His brother was charged with basically looked, investigated for murder of two people, and no charges were brought because he cooperated. What Mr. Moore had in his mind was, I know I was involved in this crime. He never denied that. He thought it was an accident and that he wanted to give his information to the police, but he wanted to be assured that they wouldn't charge him with murder. And he was told. I think the magistrate got it right when she said a reasonable person in Mr. Moore's position would have definitely believed that there was a promise of leniency because he could have concluded that the offer of leniency was given in exchange for a confession. We're over three minutes already. And could you just take one minute on the other subject of whether there was no purpose to making a motion because it was so apparent that it didn't matter whether the confession was introduced or not because he had told his brother the story and his brother would have said the same thing? Yes, Your Honor. As the briefs set out, there is no record that Mr. Moore confessed to other people. In fact, it's the opposite. Mr. Moore's brother, Raymond Moore, said that he was only learned of the story at the interview and that at some point. Well, there's a statement in there. Is this the same story that he told you yesterday? And he said yes. And then there's something else in there where the brother says that he had been told the night before that there had been an accidental killing. There's also a statement in there where the judge says, if he would have told you to play it off, would you have been able to do that? Or did they tell you everything so you couldn't play it off? And Raymond Moore says, no, they didn't really tell me everything. What he knew was that his brother was involved in something and that the police were looking at him for this murder charge, and he went to his brother for advice on how to handle that. Should he turn himself in or should he run away? His brother told him, turn yourself in, cooperate, do what I did, and they will most definitely follow through. The attorney's declaration also stated definitively that he had made the full confession to the brother. Mr. Moore and I discussed the possibility of filing a motion to suppress and conclude that it would be unavailing because, in the second place, he had previously made a full confession to his brother. It certainly indicates that Mr. Moore told her that he had previously made a full confession to his brother. Yes. In fact, it's sufficient that counsel attempted to find out whether Mr. Moore, in his capacity in his church, might be privileged to hear the confession, and therefore they could claim priest-penitent privilege. That doesn't sound like counsel ignored this at all. Counsel's statement is based on the belief that he, his client, had given a full confession. He says he discussed it with Mr. Moore, and this is the reason why he and Mr. Moore together decided not to file a motion to dismiss. Mr. Moore was told by the police to go to his brother. He went to his brother with a story. We don't know what story he was- Our claim here is not whether there was police error, but whether there was attorney error. And the attorney has said, Mr. Moore and I discussed the motion to suppress, and we decided not to, in part because Mr. Moore had previously made a full confession to his brother. But the record doesn't support that, Your Honor. At best, it's- Erin? The record doesn't support that. It's ambiguous. He tells- Well, but it's in the record, and the question is, as a factual statement, and the question is whether the state court, which concluded that this had happened, was unclear error and so decided. At that time, the attorney was focusing only on Miranda. He didn't look to whether coercion was an issue. But that doesn't have anything to do with whether he had made the full confession and whether, if so, there was no point to making a motion, whether it was a Miranda violation or it was a coercion violation. The issue is, did it matter whether the confession was suppressed or not? It did matter, Your Honor, because what we're presupposing is that he would have won the motion to suppress and then would have gone to trial. That is the test in deciding whether or not the outcome would have been different. If this attorney had filed the motion to suppress and won on Miranda or on coercion, as the magistrate judge found his statements were involuntary, he would have been in a wholly different position. That is what the test is. The question is, would he have been in a wholly different position, or would he have been in the same position with regard to evaluating his options? Well, here we are assuming that he would have gone to trial and his brother would have testified against him. That would have been a wholly ñ No, but I think that the attorney in deciding, in advising him whether to plead or go to trial, would have taken into account, as she says she did, that the brother would have been called to testify at trial. At trial. Right. Right. And so ñ Not that she would have gone to trial, but that she would have taken this into account, advising him whether he would have gone to trial. Well, Mr. Moore has been consistent throughout that this shooting was an accident and that he was not culpable of murder. So the record is clear that he would have gone to trial. If they brought these other people in to testify what the story was, it would have only corroborated his testimony from the very beginning that he was guilty only of, in his words, either negligent criminal homicide or manslaughter, not murder. Well, he ñ counsel says they discussed with Mr. Moore definitions of aggravated murder, murder and felony murder. He pleads to felony murder because they're in the process of a kidnapping. He's got a gun in hand and the man is shot in the temple in what they claim is an accidental ñ what looks like an execution, but what everybody claims was an accidental shooting. It looks like counsel has thought that he's ñ he's plotting down to felony murder when he could get aggravated murder. Everything that is in the record is ñ comes from Mr. Moore's statements to the police. All the more reason for the attorney to have filed the motion to suppress to be able to get those statements off the table and then begin with an investigation to see what the police had at the time. It's significant that in the course of giving his statement, Mr. Moore handed over the gun that was the murder weapon. The police had not found it and it was the first time that they had any evidence of a murder weapon. All right. Thank you, Kim. Thank you. May it please the court, Jennifer Lloyd for the appellee. Petitioner's argument on appeal depends entirely on his challenge to the post-conviction court's finding of fact, which gets a presumption of correctness, that there was ample proof of his guilt aside from his confession to the police. What possible reason is there not to make the motion to suppress a confession? Did the counsel explain what he would have lost by doing it, why he wouldn't do it? He did not expressly explain what harm could have come from his filing a motion to suppress. But at the time he was advising his client, his client was not yet charged with, as far as I understand, he was not yet charged with anything. He was charged perhaps on an information. The prosecutor had not yet presented the case to grand jury. There was no indictment. There was the distinct possibility that petitioner could be charged with aggravated felony murder based on the evidence. He was afraid of retaliation if he filed a suppression motion? I don't see the connection. No, no. I didn't mean to suggest that. But what I'm saying is at the time he received a plea offer, petitioner received a plea offer to plead guilty to the felony murder. Counsel had to make a decision whether to pursue a motion to suppress, notwithstanding that even if he were successful on that motion, there was still ample evidence of petitioner's guilt. You don't think the bargaining power would have been considerably different without a confession? If there were no confession, yes. But even without petitioner's statements to police, the trial lawyer knew that petitioner had made statements of full confession to two other people, his brother and this Ms. Ziegler. I don't see anything about the other person in the record that where he made a confession to her. You can find it in excerpt of record, page 55, which is counsel's affidavit. Yeah, but the transcript actually shows that Ms. Ziegler tells the police that she hadn't ever heard anything until right at that moment. So Ms. Ziegler sort of drops out of this pretty quickly, doesn't she? Well, I don't think she does. I think she says that she didn't know about all of this until that day. I don't think she says that I had never heard anything about this until this moment. And I think that it's a reasonable inference from what she says that, yes, we all talked about this. We all sat down. As petitioner says, he went home. He wanted to talk to his brother. I don't know what the relationship with Ziegler is, But I think it's at least a fair inference from that, that she had heard exactly what Mr. The brother, Raymond Moore, had heard, which was a full confession. Did he ever go to this Ms. Ziegler? Did counsel go to Ms. Ziegler or to the brother and say, if you were called to testify, what would you say? There's nothing in the record saying that counsel directly spoke with them. So he really didn't know what they would testify to. If they were if we assume the confession suppressed and the whole case, the police have is that he supposedly told the story to these two people. Don't you think the council might have gone to the two people and said, what is it you would testify to if you were called? Maybe the brother would have said, I'd never testify against my brother. I'm not sure that there's any basis in this record to to reach that conclusion. I mean, again, we have findings of fact by the post conviction court that that are presumed to be correct. We have nothing in the record suggesting that Mr. The brother would not have testified against his brother. In fact, he's been entirely forthright in every council has no idea what the brother would say. Well, counsel counsel knows that his client has told him that he made a full confession to these people. They discussed what do we mean by full confession? Presumably it's what he told the police and what he told the police was that it was an accident, i.e. that it was felony murder, but not aggravated murder. So that's what the confession would have been. Right. Not a confession to aggravate. Right. Right. I think that's absolutely right. But throughout their contacts and throughout petitioners conversation with the police and throughout his conversation with his brother, which we which we know about both from his interview with the police and his testimony in his in the post conviction proceeding. We know that petitioner throughout was even if he didn't like the fact that felony murder does not require intent, that he knew he was guilty of felony murder because he had committed this murder in the course of the felony. And so even though he insisted that the killing itself was an accident, he was still confessing to the crime. I mean, I think it's fairly evident that the case is stronger with a confession than without. So I'm still not clear why. What what does it cost to make a motion to suppress? Clearly, there are potential grounds for suppression. Maybe he wouldn't have won. Maybe he wouldn't. I mean, the magistrate thought that the confession was involuntary. So it's hardly an open and shut question that there's no it's a frivolous motion. It's not a clearly legitimate motion. Whether he was in custody is certainly not an open and shut question either. Why wouldn't a lawyer make a motion with if there's nothing to lose instead of a client who's got a confession where there's absolutely no purpose in talking about anything? You have a client where the case against him isn't. He says he told his brother and maybe a girlfriend. And the lawyer doesn't bother to find out from either of them whether they would have testified what they would have said. Well, I mean, why isn't that ineffective assistance? It's not ineffective assistance because the lawyer had to make the decision that he made at that time in light of all of the circumstances. And again, petitioner was not yet charged by indictment. He didn't know that he was going to be that he might be. He knew there was a possibility that the D.A. might charge with aggravated murder, but he didn't know that the grand jury would return such an indictment. No, no. But he received a plea offer. He had to advise his client of all of the risks and consequences felt that although he he stated under any pressure, the attorney said anything about being under any pressure to get back to the D.A. on the plea offer. Was the D.A. likely to up the charges if they didn't take the plea offer before they went to the grand jury? There's nothing in here that that explains that. He did have a plea offer in hand at the time. That's my understanding. He he had a plea offer. He had to advise his client. He advised his client about the risks that he could be charged with aggravated murder. He also spoke with his client about the possibility of filing a motion to suppress. And as he states in a page at Excerpt of Record 55, he they concluded that. Well, he says he spoke with Petitioner and concluded that the motion would be unavailing because, one, he was not in custody. And two, you know, does the client know whether he's in custody? Is that a legal question or isn't it an objective test as a matter of law? Right. It is. Is it really the client's job to determine that fact and have the lawyer rely on what the client thinks custody means? No. But what the lawyer says before that paragraph is he had reviewed the transcript. It made it abundantly clear that. Well, it doesn't make it abundantly clear to everybody that he wasn't in custody. I mean, some lawyers might read that transcript and think it's pretty clear he was in custody. Well, and reasonable minds can differ. Well, maybe. But certainly you wouldn't rely on the view of the client as to what custody is. But I don't think that he is. I think that his affidavit before that paragraph, I mean, that paragraph is a little bit of shorthand saying we concluded that it would be unavailing because he was in custody. But previously it says, I reviewed the transcript. I think the thing that would be significant would be, as Judge Biby asked, if the lawyer said there was a reason that we should take this plea without making the motion. Because otherwise, I don't know what there is, why you wouldn't make a motion. I mean, I can't think of any reason you wouldn't move to suppress under these circumstances unless there's something to lose by it. Well, and even assuming that that's true, that counsel unreasonably failed to make the motion, we still have the fact that petitioner had made full confessions, and that's a finding of fact by the post-conviction court that is supported by the record and hasn't been rebutted in this proceeding. Petitioner had made full confessions to these other people. He consistently had told his lawyer, I committed the elements of felony murder, whether he liked it or not. And so counsel has to make the decision, if we are to go to trial, what is our defense? What possible defense can we mount? It's accidental, it's not a defense to felony murder. And so what the lawyer had to do was determine, based on the information that he received from his client, from the transcript, from all the information that he had. I don't think about it. Because accidental is no defense to felony murder, the confession is perhaps of less relevance than it might otherwise be, because, and this is an argument with the priest, but he would have to be able, the question is what would his defense be even if the confession was out? And if the confession was out, and the brother didn't testify, either one, presumably the government would still be able to prove everything else that happened. Is that right, or is there any reason to think it wouldn't be? That they took the guy and kidnapped him essentially, and that he ended up being shot, no matter who shot him. Did it matter who shot him at that point? No, not for purposes of felony murder. Right. And I Let me ask you something. Is there a minimum sentence for felony murder? There is. My understanding is that it's 30 years under both Measure 11 and under Oregon Revised Statutes 163.115. Once you decide to plead to felony murder, you've got an automatic 30-year sentence? Yes, a minimum sentence. I thought he got 300 months? 25 years, I apologize. It's a minimum 25-year sentence. That is what he received, that's what the court had to oppose. If there hadn't been a confession, wouldn't counsel have tried to bargain for something less than felony murder? I think it's possible. What's the next countdown? Well, it could be a manslaughter charge. It could be, as counsel said, a criminally negligent homicide charge if it were mere negligence. But felony murder does not require any mental state toward the death, only that it was committed in the course of committing a felony. The problem is that the kidnapping seems to be pretty clear. Right. The circumstances of the death were in question, but the kidnapping didn't seem to be arguable. I don't think so. What happened to the other people? I can't say. I mean, it's not that I'm not at liberty to say. I don't know. I don't recall from this record exactly. They would all have been guilty of felony murder also, right? Yes. Everybody involved. Yes. And you don't know whether those people all were charged with felony murder? I believe they were charged. I don't remember how everything turned out in those other cases. Wow. I believe that I've already used up more than my time. I'm going to briefly, just very briefly explain why in light of undisputed evidence that they were, it appears they were in custody the day before. They were let out. They were told to come back at a particular time. They were told if you don't come back, we're going to come get you and you're not going to like how we do it. How could they have been voluntarily in custody? Or not in custody? Well, I'm not even sure that I agree that they were in custody during the first interview. In my looking in that, at the transcript of that interview for purposes of the oral argument, I don't see anything there. Well, I couldn't even find that part. I couldn't find that either. I found it in your brief and I looked at the page and there's nothing about a Miranda warning there. Yeah, I don't see it either. And so I don't agree that they were in custody at that time. I believe that based on the record that the information that counsel had, including his conversations with Petitioner about the precise circumstance, the factual, not legal circumstances, that counsel reasonably believed that he was not in custody at that time. But again, I think the dispositive point, the most important point in this case, is not whether there was some basis to file a motion to suppress, whether there was some factual basis on which counsel could have moved to suppress, but whether reasonable counsel could have concluded that it would be fruitless to do so and that instead his client would be better served by his pursuing this plea offer. Well, better served is the problem. The question is whether it's good enough that there was, he thought it would be futile. But as Judge Reinhart suggested and Judge Biden as well, there doesn't seem to be any reason it would have been harmful. So better served. My question is why would he be better served as opposed to not wasting time with something useless? Well, I think because it was kind of a bird in the hand kind of question. Not much of a bird, that felony murder. Well, I mean, he was also faced with a client who repeatedly and consistently had admitted each and every element of felony murder. That's fine, but what do you get? I mean, if you get something that's the worst that could happen to you, the only thing worse could have been capital punishment. Right. Counsel, he pled for 300 months. Is that right? That's right. He pledged a minimum sentence. Right. Was there a higher sentence that he could have gotten on the felony murder charge? Well, and that's, I appreciate your raising that. Yes, with a departure sentence, the court could have departed from that minimum sentence. The minimum is also the maximum absence, a departure? Right. And what would be the grounds for departure? Well, it could be any number. I don't even know that there were necessarily any in this case. It could be anything from deliberate cruelty to, well, use of a weapon would be a little bit redundant in this particular case. But persistent involvement, if he had prior criminal history, he did have some. I don't know how significant it was or would have been to a trial judge. So it is true that he had. Well, aren't those the things that the lawyer would examine before deciding whether he was making a deal for something better than he might otherwise get or whether he's giving away the maximum? And there's no discussion I can find anywhere here that the lawyer considered whether he was getting a good deal, a bad deal, whether he's agreeing to the worst that could possibly happen. Well, there isn't. There is discussion about the sentence. There was a sentencing claim in the post-conviction case and possibly in this case. Since it wasn't an issue on appeal, I didn't spend much time with it. He did discuss the sentencing issues at excerpt of record 58 and 59, but he did not explain that that was part of his calculus in advising his client that it would be or in concluding with his client that a motion to suppress wouldn't serve any purpose and that instead they should go ahead and accept the plea offer. Thank you. Thank you very much. I'd like to answer your question, Your Honor. I'd like to ask Judge Bersan regarding the circumstances surrounding. The case of 87, you said they were asking questions about it the day before, and I invoked the fifth, which I took to mean when they got Miranda orders, not the act. And they stopped and came back ten minutes later and said we've contacted your brother Ray, and then the statement of having called the Sheriff's Office and said that we knew that they would come get us. But the police report, is that in here? The police report on excerpt of the record 33 supports that they did call investigation December 20th, 1995. At noon I contacted Detective Huffman. At 1.15, Detective Huffman called Wilhyser's residence. Then Detective Huffman told Wilhyser and his Randy Moore, was told that Lonnie Wilhyser and Randy Moore were in the Medford area with their older brother Raymond Moore. At this point Detective Huffman made a phone call to Raymond Moore. Detective Huffman stated that he had been talking with his two brothers and they were deciding whether they were going to come to the Sheriff's Office in Grants Pass and speak with us or whether they were going to speak with an attorney. Following the telephone conversation, Huffman advised me that Raymond told him that they would have the brothers at the Josephine County Sheriff's Office about 3.30. So that shows that there was a follow-up phone call made to Raymond Moore's residence trying to find the brothers. And then in Randy Moore's deposition, he says we called the Sheriff's Department at that time and they told us that if we were not there by 3 o'clock they would come and get us and our family would not like the way they did it and we knew what that meant. That's ER 87. So that corroborates. The police didn't say exactly what they said. I would like just to reiterate that I think this attorney had nothing to lose in filing the motion to suppress and, in fact, everything to gain. And I disagree with counsel's discussion about the sentence that Mr. Moore was facing. Under the statute, felony murder would be the same as murder, which would be 10 years plus another 15 years if the judge added that on. In this case, he was given a measure 11 sentence, and part of the plea was that he would get 300 months and no reductions. So he wasn't gaining anything by pleaing. Mr. Sawyer got 25 years. Mr. Woolheiser got 17 and a half years. That's not in the record, but that's my understanding. So it was incumbent upon the attorney. Mr. Sawyer got 25 years? Yes. So this attorney had everything to gain and nothing to lose by filing the motion to suppress, and his failure to do so was ineffective and changed the course of the whole trial. Thank you. The case disserted will be submitted. Thank you both very much. The next case for argument is United States v. Tsai Chou.
judges: Reinhardt, Berzon, Bybee